CORNELL *vs.* HICHENS, CORNELL *vs.* WILIFORD, and CRAM *vs.* LAWTON.

THREE APPEALS FROM CIRCUIT COURT, RACINE COUNTY.

Heard March 17.]                              [Decided July 10, 1860.

*Corporations — Promissory Notes — Mortgages — Constitutional Law.*

Where a corporation may receive a negotiable instrument for any purpose, the *bona fide* indorsee of such instrument, though given for an unauthorized purpose, will not be allowed to suffer.

A party who may have dealt unlawfully with a corporation, will not be permitted to take advantage of his own wrong to the injury of an innocent person, who is a *bona fide* holder of a promissory note made to a corporation.

The holder of a mortgage given to secure a negotiable promissory note, stands in the same relation to the mortgage that he does to the note itself.

*Fisher vs. Otis,* 3 Chand., 83, *Martineau vs. McCollum,* 4 id., 163, and *Croft vs. Bunster,* 9 Wis., 503, considered and followed.

The act of 1858, declaring the rights of defense of mortgagors in certain cases, is in violation of the constitution, by impairing the obligation of contracts.

Where a right has accrued to a party to have or demand something of another, such right cannot, against the will of the party to be injuriously affected, be divested, modified or controlled, by any subsequent legislation.

The facts in these cases may be gathered from the finding of the circuit court, and the opinion of this court. The notes and mortgages, and bonds of surrender, &c., on which the foreclosures are founded, and which were put in evidence, and the pleadings, are similar to those given in the case of

*Blunt vs. Walker et al., supra* 334.   The circuit judge found as follows:

"This action having been brought on to hearing upon the pleadings and proofs in this action, and this court having duly considered the matters in issue in this action, find, as matters of fact:

"1.   The defendant, William C. Hichens, on the 27th of July, 1855, did execute and deliver the note and mortgage as alleged in the complaint, and thereby agreed to pay the amount and interest as stated in said complaint; that the said mortgage was duly executed, acknowledged and recorded, as alleged in said complaint.

"2.   The plaintiff, on or about the 9th day of August, 1855, became the purchaser of said note and mortgage, without notice or knowledge of any defence thereto, and paid therefor nine hundred and fifty dollars and eighteen cents, and was at the time of the commencement of this action, and now is, the owner of the same.

"3.   The defendant, William C. Hichens, has hitherto neglected to pay, and has not paid, any of the principal or interest secured to be paid by said note and mortgage.

"4.   The note and mortgage were given for six shares of $100 each, of the capital stock of the Racine and Mississippi Railroad Company, and four hundred dollars in money paid by said railroad company to said defendant, William C. Hichens, which said money was paid two years previously, and a mortgage to the company taken, which was released as appears in the testimony.

5th.   There is now actually due the plaintiff the sum of eighty dollars as interest on $400.   That there is secured and unpaid on said note and mortgage the sum of $400 and interest thereon from the 10th day of August, A. D. 1857, at the rate of ten per cent., and this is founded upon the question of law hereinafter stated, and in case I am wrong in the conclusion of the law hereinafter stated, then there is secured and unpaid upon said note and mortgage, the amount as claimed in the complaint in this action.

6th.   The premises mortgaged cannot be sold in parcels, and that a sale in one parcel will be most beneficial for the parties interested.

This court finds as a question of law, that the said note and mortgage described in the complaint are void so far and the amount of $600 of the principal thereof, and interest

thereon, represented by the six shares of the capital stock of the Racine and Mississippi Railroad Company, and that the said note and mortgage are valid in law only to the amount of $400 and interest thereon at the rate of ten per cent.

The court now here orders judgment of foreclosure in this action, and that judgment be entered upon and in pursuance of this finding.

DAVID NOGGLE, Judge.

To which the plaintiff excepted for reasons following:

1st. The note and mortgage are valid in the hands of plaintiff, he being an innocent purchaser, and having become the owner before any thing became due thereon.

2d. The defence set up is not proven, and is not available in this action.

3d. The plaintiff is entitled to recover the amount secured and unpaid on the note and mortgage.

The defendants excepted to so much of the finding of the court in this case, as finds that the note and mortgage are valid in law as to $400 and interest, and that there is an amount due thereon, for the reasons following:

That the mortgage released by the railroad company as a part of the consideration of the note and mortgage in suit, was void, consequently no valid consideration was given for said note and mortgage.

Judgment was entered according to the finding, and the plaintiff appealed.

*Strong, Fuller, and M. M. Jackson* for the appellants. Upon the point that the note did not lose its negotiable character by being secured by a mortgage, cited 4 Chandler 153; 3 Chandler 83; Powell on Mortgages, 908 and note; *Cicotte vs. Gagnier*, 2 Mich., 381; *Dick vs. Maury*, 9 S. & M., 448; Contra see *Marshall vs. Billingly*, 7 Ind., 250. And it was good in the hands of a *bona fide* holder, R. S., Sec. 1, page 408; Chitty on Bills, 81; Story on Notes, Sec. 192; Edwards on Bill, 56, 57; *Vallet vs. Barker*, 6 Wend., 620.

The other points made by them were the same as was made by the appellant's counsel, in the two preceding cases.

*M. H. Carpenter* submitted the following argument on the same side.

This action is upon a note, secured by mortgage, given to the Racine and Mississippi Railroad Company, which came

to the plaintiff's hands, in due course of business, before maturity, and for valuable consideration. Neither note nor mortgage gives any notice for, what purpose, or upon what consideration it was given; and there is no evidence that the plaintiff or his agent when he purchased them, knew anything against their validity; on the contrary, the evidence is direct and positive the other way.

1. The note and mortgage are collectable in the hands of the plaintiff, a *bona fide* holder; if the railroad company had power and authority to receive a note and mortgage, upon any consideration, or for any purpose; and no evidence of equities between the maker and payee, appearing on the face of the note or mortgage, and no defence which, between the original parties, might defeat recovery, can avail against this plaintiff. Story on Bills, 220, and cases cited in notes; Chitty on Bills, chap. 6, ed. 1833, and cases cited in notes; 1 Parsons on Con., 213, and cases cited; *Brown vs. Davis,* 3 T. R., 182.

And this, even although the note may have been stolen by the plaintiff's endorser. First decided as to bank notes in *Miller vs. Race,* 1 Burr., 452. And afterwards held as to all negotiable paper, in *Grant vs. Vaughan,* 3 Burr., 1516 and 1524. The last is a leading case upon the qualities of negotiable paper; and as Lord Mansfield there settled the law, it has remained for a century.

Even positive illegality in the consideration of negotiable paper, will constitute no defence in an action thereon, in favor of a *bona fide* holder, except where some statute declares the note or bill absolutely void for that reason. *City Bank vs. Barnard,* 1 Hall, Sup. Ct. R., 70 ; *Vallett vs. Parker,* 6 Wend., 615.

Even gross negligence in the purchaser, taking it under circumstances which raise a suspicion that the note has been illegally, or even feloniously obtained, will not prevent the endorsers recovering upon the note. " Gross negligence may be evidence of *mala fides,* but is not the same thing. We have shaken off the last remnant of the contrary doctrine." Lord Denman in *Goodman vs. Harvey,* 4 Ad. and El., 870.

In *Wilmarth vs. Crawford,* 10 Wend., 341, which was an action upon a note given for stock of a corporation, the court says: " If the company are authorized to take or give notes generally in the execution of their powers under the act, though they may not have been authorized to take the

note in question, yet, as the plaintiff received it before due, and for a good consideration, and without notice of the consideration for which it was originally given, and which it is contended vitiates it, he would be entitled to recover. Conceding it to be taken without authority, it is valid in the hand of a *bona fide* holder." 6 Wend., 615.

It is evident that this corporation, in the regular transactions of the business for which it was created, might receive notes secured by mortgages. It might transport merchandize on credit, and take notes and mortgages in payment; or contract to transport a farmer's produce for a series of future years, and receive a note and mortgage in present payment; it might dispose of rolling stock no longer needed upon the road, or so damaged it could not be thus used, and receive payment in this way,

That this note was secured by a mortgage, does not destroy its negotiable character. The mortgage is an incident to the debt, and passes with it, subject to the same regulations; and no defense is available in an action to foreclose the mortgage that would not be available in defense of an action on the note. *Martineau vs. McCullum,* 4 Chand., 153. So that we submit that it is not competent to inquire into the consideration of this note against us.

Chapter 49 of the General Laws of 1858, has no application to this action. "As a question of construction merely, it is a general rule that statutes are not to be construed retrospectively, or to have a retroactive effect, unless it shall clearly appear that it was so intended by the legislature, and not even then, if by such construction the act would divest vested rights. Smith on Statutes, 679, and cases cited.

If it was clearly intended to retroact, and give a defense to negotiable paper, in the hands of innocent holders, which did not before exist, then it takes away a vested right in this plaintiff, and impairs the obligation of the note and mortgage, and is, therefore, unconstitutional and void. *Bronson vs. Kinzie,* 1 How., 311; *McCracken vs. Hayward,* 2 How., 608; *Holden vs. James,* 11 Mass., 396; *Wilkinson vs. Leeland,* 2 Pet., 627; *Blanchard vs. Russell,* 13 Mass., 1; *Kimberly vs. Ely,* 6 Pick. 440, 445; *Betts vs. Bayley,* 12 Pick., 572; *Sturgis vs. Crowninshield,* 4 Wheat., 122; *Quackenbush vs. Danks,* 1 Denio, 128.

The case finds that on the 14th of April, 1858, this plaintiff was the owner and *bona fide* holder of the note and mortgage

in suit in this action; and, as I have already shown, no defense could be made against him upon the ground that the note, as between the original parties, was obtained by fraud. On the 15th day of April, 1858, the legislature passed a law which authorizes the defendant to set up and prove these facts, and directs the court to give a judgment against the plaintiff.

Can any argument or authority be necessary to show that such a law impairs the obligation of this contract?

2. But the importance of the principle involved in this case, induces us to consider other points relied upon by the defense. It appears from the case, that the note and mortgage were executed to the Racine and Mississippi Railroad Company, in payment for six shares of the capital stock of the company; and it is contended that this renders them void.

The charter of this corporation, Chap. 397, Laws, 1852, provides: " Section 2. The capital stock of said company shall be three million of dollars, in shares of one hundred dollars each, and as soon as three hundred shares of stock shall be subscribed, and five dollars on each share actually paid in, the subscribers of such stock, with such other persons as shall associate with them for that purpose, their successors and assigns, shall be, and they are hereby declared and created a body corporate and politic, by the name and style of the ' Racine, Janesville, and Mississippi Railroad Company,' with perpetual succession, and by that name shall have all the privileges, franchises, and immunities incident to a corporation; they shall be capable in law of purchasing, holding, selling, leasing, and conveying estate, real, personal, or mixed, so far as the same may be necessary for the purposes hereinafter mentioned; and in their corporate name may sue and be sued, plead and be impleaded, may have a common seal, and may alter the same at pleasure, and generally may do all and singular, the matters and things which to them it shall lawfully appertain to do for the well being of said corporation."

The 300 shares of the stock of this company had been subscribed, the 5 per cent. thereon fully paid, and the corporation was organized, and therefore possessed of all powers conferred by the charter, before this note and mortgage were received. This brings us to the principal question here involved, can a corporation, which is not restricted in that

behalf, receive any thing but cash in payment for subscriptions to its capital stock; or, in other words, can it by special agreement with the stock subscriber postpone the time of payment on the subscription to a future day, the subscriber paying interest on the amount of capital represented by his stock? for this is the effect of receiving a note and mortgage on such subscription:

1. That such notes and mortgages have been given in our state to the amount of millions; and have circulated through all the channels of commerce and capital in the United States and in Europe, their validity never questioned, sufficiently shows the opinion of all business men, and of the legal profession throughout the country upon this subject. And now, after millions have been invested in railroads in Wisconsin, upon the faith of these securities, enhancing the value of our lands, and thus enriching these same farm mortgagors, they come into court, resisting the obligations upon which, by their procurement, and for their benefit, widows and orphans have invested their living and substance, upon the ground that "public policy" demands this dishonesty. If this were so, would not the world wonder what kind of a "public" we were?

2. The legislature has recognized the validity of these notes and mortgages. Chapter 242, Laws of 1853, incorporating the Milwaukee, Fond du Lac, and Green Bay Railroad Company, is very similar to the charter of the Racine and Mississippi Railroad Co., under consideration, and confers the same powers in nearly the same language. No authority is given to the company to receive notes and mortgages for stock, except in the general grant of powers incident to all corporations, whether expressly conferred or not. In chapter 121, Private Laws of 1854, authorizing the consolidation of this company with the La Crosse and Milwaukee Railroad Company, the legislature thus recognize and deal with notes and mortgages given for stock: "In all cases when any individual, or individuals, who reside north of the junction, may have executed or delivered a mortgage or mortgages, or any other securities in payment for stock in said Milwaukee, Fond du Lac and Green Bay Railroad Co., or to aid in the construction thereof, said consolidated company shall, within ninety days after notice, as aforesaid, that they desire to withdraw their subscription, deliver up to them, or their legal representatives, and cause to be cancelled of record, at the cost

and expense of said consolidated company, all such "mortgages or other securities; and in case any such mortgage, or other security, shall have passed out of the hands of said railroad company, and said consolidated company shall not, within the ninety days aforesaid, be able to procure the same, to be delivered up and cancelled, as aforesaid, said consolidated company shall be liable to pay, and shall immediately pay to each and every person, whose mortgage or other security aforesaid, shall not be delivered up and cancelled, the full amount of the sum for which the same was given, and interest at the rate mentioned therein; and shall also be liable for, and pay to such persons all damages, costs, and expenses that may accrue on the same, till the said mortgages and other securities are given up and cancelled."

In chapter 49, General Laws of 1858, the legislature again recognize the validity of "farm mortgages," and provide concerning actions upon them. We submit that these acts of the legislature are a complete and general recognition by the legislature of Wisconsin of the right of all railroad companies thus to receive these notes and mortgages; and are equivalent to a grant of the right to do so. Upon this point see *Hall, trustee, &c., vs. The Sullivan Railroad*, in circuit court of the U. S., for district of New Hampshire. In that case Judge Curtis held that a certain railroad mortgage, which it was contended, and conceded, could not be given without authority of the legislature, had been recognized, and thus rendered valid, by two subsequent acts of the legislature; one authorizing the company to issue new stock to a certain amount, and the holders of bonds under the said mortgage, which was described in said act, by its date, to subscribe to the new stock, and the second act exempting the trustee from obligations, except &c., in case it should become necessary for them to enter into possession of said railroad under said mortgage.

Upon this subject Curtis, J., says: "By the first of these acts the legislature recognized the existence of the mortgage now in question, and confer on the corporation new powers to enable it to pay the debts secured by the mortgage, and it is expressly declared that this was done to enable the corporation to have greater power and means to provide for the public travel and transportation over its railroad. By the second of these acts not only the existence of the mortgage and the power of the trustee to take possession of the rail-

road and operate it for the benefit of the bondholders are are recognized, but the responsibility to be incurred by the trustees in the exercise of these powers, to take possession of and operate the road, is regulated and limited. After the legislature had thus granted to the corporation new powers to enable it the better to accomplish its duty to the public, by paying off this mortgage, and have interposed to facilitate the exercise of the powers of the trustees under the mortgage, by regulating and restricting the personal liabilites to be incurred by them in the exercise of these powers, it seems to be impossible to maintain that the mortgage itself is void, because contrary to the public policy of the State. The will of the legislature while acting within the powers conferred by the people of the State, constitutes the public policy of the state, and so far from manifesting its will to have this mortgage void and inoperative, it has interfered to help out its operation, and make it more easily available as a security. I do not think a Court of Justice can undertake to decide that a mortgage was contrary to the public policy of the State, after the legislature had directly interposed to aid the mortgagees to act under it. I am therefore of opinion that this mortgage, so far as it purports to convey to the trustees the tangible property of the company, and the rights to manage and work the road, and take toll thereon, is not void as being contrary to the public policy of the state." To the same effect is *Shaw, et al., Trustees, vs. Norfolk Co. R. R. Company,* 5 Gray, 162–180.

3d. But entirely apart and from this legislative recognition of the validity of these notes and mortgages, we contend that they were originally valid, and that the right of the company to receive them, is one of the familiar, often exercised, often recognized, never denied incidental powers of a corporation.

First. It has been universally conceded, as laid down in Angel & Ames on Corporations, that, " subscription for shares in the stock of a joint stock incorporated company, is a contract; and the interest thereby acquired, is a sufficient consideration to enable the company to support an action against the subscriber for a recovery of the amount subscribed. Ang. & Ames, on Corp., sec. 517, and numerous cases cited in note 1; *The Hart. & N. H. R. R. Co., vs. Kennedy,* 12 Conn., 499; *Essex Bridge Co. vs. Tuttle,* 2 Vt, Rep., 393; *Mann vs. Cook,* 20 Conn., 178; *Danbury & Nor. R. R. Co. vs. Wilson,* 22 id., 435; *Troy & B. R. R. Co., vs. Tibbits,* 18 Barb., 297;

*Palmer vs. Lawrence,* 3 Sandf., 161; Redfield on Railways, and cases cited in note, 1 p. 72.

We submit that this point is conclusive of the whole question. If the subscription be a contract, (and the cases cited abundantly establish it,) it must follow that, like every other contract, all its terms and conditions may be settled to suit the wishes, the interest, the convenience, the pleasure of the contracting parties. After the organization of the company by the subscription and payment of the amounts required for that purpose, there is then a corporation to be contracted with, and when and how it stipulates for the payment of its capital stock is only a question of business economy, and falls clearly within the grant of power to do " whatever shall lawfully appertain to them to do for the well being of said corporation." Suppose the company locates its road over the land of a subscriber; may it not contract with him that his damages shall be applied upon his stock subscription? Would any one claim that the money must be paid over on the subscription, and then be paid back on the claim for damages? Was the law ever thus captious for form? The company wish to buy a locomotive. They can do so and pay in a note and mortgage on a year's time; a farmer is willing to subscribe for stock on a years time, and secure the payment by note and mortgage. Where is the illegality of permitting the company to receive the notes and mortgage in payment of stock, and pay the same for the locomotive? When a corporation is authorized to transact any particular business, it may do it in the same way that an individual could. This is indispensable to the well being of the corporation.

In the *Rock River Bank vs. Sherwood,* decided by this Court, 10 Wis., 230, the true doctrine upon this subject is affirmed; and it is held that within the general scope of its powers, a corporation may contract in the same manner, upon the same conditions, and subject to the same general prohibitions and penalties, which appertain and attach to an individual in transacting the same business. Now clearly, an individual soliciting subscription to the stock of some common enterprise might make contracts relating to subscriptions to suit the convenience of the subscriber—and it follows that the corporation, in doing the same thing, may do it in the same way as an individual might. It is perfectly legal for the corporation to take subscriptions, absolute or conditional; upon present, or stipulated future payment; and in

general to make any agreement it pleases with the subscriber, as to the terms and conditions of his subscription, and the time of payment; and so it has been uniformly decided.

*Goshen Turnpike Co., vs. Hurlin,* 9 John, 217, was an action on a note given for stock in the corporation, and an action of assumpsit was maintained upon it. Certainly if the note had been also secured by mortgage, or the signature of surety, it would not have been less valid. In *Duchess Cotton Man. vs. Davis,* 14 John., 238, and in *Union Turnp. Co., vs. Jenkins,* 1 Caines Cases 86, the same decisions were made, and recovery had on such notes. In *Vt. Cent. R. R. Co., vs. Clayes,* 21 Vt., 30, an action was brought on a promissory note given to the company for five per cent. of a subscription to the stock. The Court held the note valid, and in rendering judgment upon it, say : "We do not think that the simple fact that the commissioners accepted the note of the defendant in lieu of so much money, or, as the case finds, in settlement of the sum which was to have been paid upon the making of the subscription, can have the effect to give the defendant the right to repudiate his contract, or render it void for want of consideration. The corporation having accepted this note as so much cash, could not certainly deny to the defendant the rights and privileges of a corporator.

This act does not, as in the case of bank charters, require the first installment to be paid in specie; and no good reason is perceived why it should. If it is paid in money's worth, every valuable purpose of a payment is answered, and we see no objection to the commissioners regarding the defendant's note as money's worth, if they saw fit. There is no pretence that the public have an interest in this subject, as in the case of monied corporations, which needs protection, and which might lead the court to require a strict performance of the provisions of the charter. There is no pretence that this note was taken in bad faith, or to the injury of any of the corporators. It is quite another question, whether the corporation might have declined to have received this note of the commissioners, and required of them to have advanced the money, if they had thought proper. But we are not called on to pass upon any such question. Neither are we required to determine what would have been the rights of the defendant, as a corporator, if the corporation had declined to receive the note from the commissioners; but, having received it, the defendant must be entitled to all the rights he

would have had, if he had paid the money upon subscribing; and upon the principle of *mutuality*, the note must be held valid in the hands of the corporation!" To the same effect are *McRea vs. Russell*, 12 Ired., 224; *Selma & Ten. R. R. Co. vs. Hall*, 5 Ala., 787; *Greenville & C. R. Co. vs. Woodsides*, 5 Rich., 145; *Mitchell vs. Rome R. R. Co.*, 17 Geo., 574. See, also, Redfield on Railways, 86 and 87, and cases cited.

*Wellmarth vs. Crawford*, 10 Wend., 341, was an action upon a note given for capital stock in a corporation, the plaintiff being a *bona fide* holder of the note. The court says: "Corporations, while acting within the scope of their authority under the act creating them, that is, in the execution of the powers granted to or duties imposed upon them by the charters, are to this extent and end like natural persons; and this view may frequently determine the lawfulness or unlawfulness of their acts, and the remedies which exist for and against them. Indeed, the whole effect of a charter is oftentimes only to invest the individuals composing the corporation in the aggregate, with powers in reference to a specified object, which each member, in his natural capacity, already possesses; the charter in question is an instance of this kind. There are many others where privileges are granted, not belonging to individuals. The tendency of modern decisions has been to assimilate the actions of incorporate bodies, within their sphere, to those of natural persons, and to determine their rights and their liabilities, and apply remedies for and against them, upon principles applicable to the latter.

"If the company are authorized to take or give notes generally in the execution of their powers under the act, though they may not have been authorized to take the note in question, yet as the plaintiff received it before due, and for a good consideration, without notice of the nature of the consideration for which it was originally given, and which it is contended vitiates it, he should be entitled to recover. Conceding it to be taken without authority, it is valid in the hands of a *bona fide* holder. 6 Wend., 615. But I am of opinion the note would be valid, even in the hands of the company."

There is a large class of cases which recognize the right of the corporation to receive conditional subscriptions, and which hold that when the condition has been performed the

subscription is binding.    In *Cumberland Valley R. R. Co. vs. Baab*, 9 Watts, 458, it was held that a subscription to induce the company to cross the river at a particular point, and to build their depot in a particular street, was binding after those things had been done, and, as we think, upon the most obvious and satisfactory grounds.    Redfield on Railways, 78, note 1 ; *Henderson N. R. R. Co. vs. Leavel*, 16 B. Monr., 358 ; *McMillan vs. Maizeville & L. R. R. Co.*, 15 B. Monr., 218 ; *N. H. Cent. R. R. Co. vs. Johnson*, 10 Foster, 390.

The same doctrine is decided in·*Penobscott & K. R. R. Co. vs. Dunn*, 39 Maine, 587, where it is held that the subscriber and the company may make the subscription to depend upon any condition, and that the company must comply with the condition before the subscriber is liable.

A subscription to be paid when the road is completed, is good ; and after the completion of the road· can be recovered.    Redfield on Railways, note 5, p. 79.    These cases are sufficient to establish and illustrate the doctrine that a subscription to capital stock is a contract between the company· and the subscriber ; and that it may, in its terms and conditions, be made as the contracting parties see fit to make it.

*N. H. Dale, Wm. P. Lyon*, and *S. P. Coon*, for the repondents, made the following points : The note and mortgage upon which this action is founded are void.    The railroad company had no power to receive a note and mortgage in exchange for stock.    Charter of R. and M. R. R. Co ; Sess. L. 1852, p. 591 ; Redfield on Railways, p. 99 ; *Mann vs. Cooke*, 20 Conn. R., 178 ; *Crocker vs. Crane*, 21 Wend., 211.

The mortgagors received no consideration for the note and mortgage, the certificate of stock, issued therefor, to John Lawton, being void and of no value.

The contract between the company and mortgagors is void, because the bond of guarantee given to the defendants, and recited in the certificate of stock, if its conditions were fulfilled by the company, would be a fraud upon the· cash paying subscribers.    *Troy & Boston R. R. vs. Tibbits*, 18 Barb., 307.

The defendant did not subscribe for stock, as provided in the charter, and· therefore was not a stockholder, and the company could not make a contract to sell stock not subscribed for, and to take in exchange therefor a note and mortgage.    *Thames Tunnel Co. vs. Sheldon*, 6 B. & Cress., 341 ; *Troy & Boston R. R. Co. vs Tibbits*, 18 Barb., 307.    The

powers of corporations must be strictly construed. Angel &
Ames on Cor., sec. 111; *Salem Mill Dam vs. Ropes*, 6 Pick.,
23; *The People vs. Utica Ins. Co.*, 15 John., 358; 7 Wis. R.,
59. And the power to make this contract is certainly not
granted by the charter, either expressly or by implication.

The fact that he has voted at the election of directors does
not make the contract binding. A. & A. on Cor., § 546.

The note and mortgage were obtained by false and fraudu-
lent representations, and cannot be enforced by the payee or
its assignee. Sess. L., 1858, ch. 49; Redf. on Railways, pp.
100, 101.

The note and mortgage, the bond of guarantee given by
the company to the mortgagor, and the certificate of stock,
since they all relate to the same subject matter and are parts
of the same transaction, must be construed together as one
contract. *Jackson vs. Danbagh*, 1 John. Cases, p. 91; *Cod-
dington vs. Davis and others*, 1 Coms., p. 186; *Hunt vs. Liv-
ermore*, 5 Pick., 395; *Makepeace vs. Harvard College*, 10
Pick., 298; *Elmore vs. Hoffman and others*, 6 Wis., 68;
*Fuller vs. Dane*, 18 Pick., 472. And they need not refer to
each other in terms. *Cornell vs. Todd*, 2 Den., 130. And
construing these instruments together, nothing is yet due
from the mortgagors.

. . The plaintiff took and holds said note and mortgage sub-
ject to all the equities of the mortgagor. Sess. Laws, 1858,
chap. 49. The assignee of a mortgage takes it subject to all
the equities of the mortgagor, unless the mortgagor is made a
party to the assignment. This principle is settled at common
law. *Matthews vs. Walwyn*, 4 Ves. Jr., 118; *James vs. Mo-
rey*, 2 Cow., 246; *L'Amoreaux vs. Vanderberg*, 7 Paige, 316;
*Pendleton vs. Fay*, 2 Paige, 202.

But if the note and mortgage were negotiable when execu-
ted, the railroad company, by attaching thereto a sealed bond,
which by its terms inhibited the severance of the note and
mortgage from the bond and from each other, destroyed the
negotiability of the instruments, and thereby rendered the
transfer to the plaintiff subject to all the equities of the mort-
gagors. A sealed note is not negotiable. *Parkison vs. McKim*,
Burnett's (Wis.) R., 53; Edw. on Bills and Notes, 208 and
209. A *fortiori* the note, mortgage and bond taken together,
are not commercial paper. 1 Am. Lead. Cases, 326 and 327;
*Overton vs. Tyler*, 1 Am. Lead. Cases, 309.

The note and mortgage are made payable to a railroad

company.   The agent of the plaintiff resided at Racine, where
the company kept its principal office.    He knew when he
bought the note and mortgage that the company were taking
such securities for stock ; and by the exercise of reasonable
diligence he might have ascertained all the facts relative to
the transaction.    These facts charge the plaintiff with con-
structive notice of the equities of the mortgagors, or at least,
sufficient to put him on inquiry.  *Pringle vs. Phillips,* 5 Sand.,
157;  *Brown vs. Tabor,* 5 Wend., 566 ;  *Gill vs. Cubit,* 3 B. &
Cress., 466 ;  *McConnel vs. Hudson,* 2 Gill., 640.


   *By the Court,* Dixon, C. J.    The facts in these three cases
are so nearly identical, that they may be disposed of by a single
opinion.    The two first are actions to foreclose mortgages giv-
en originally to the Racine & Mississippi Railroad Company.
Each mortgage was given to secure the payment of a negoti-
able promissory note accompanying the same.    In the first,
the note and mortgage were executed and delivered to the
company on the 27th day of July, 1855, and were given to
secure a previous indebtedness of $400, due from the defend-
ant to the company, and to insure the payment of $600 for
six shares of the capital stock of the company, on that day
purchased by the defendant.    In the second case, the note
and mortgage for $600 were given on the 26th day of July,
1855, to secure the payment for six shares of the capital stock
at that time purchased by the defendant, Wiliford.    The third,
is an action commenced originally before a justice of the
peace, to recover the interest alleged to be due upon a prom-
issory note for $500, given by the defendant Lawton, to the
company, and bearing date the 21st day of July, 1855.    It
was taken by appeal to the circuit court for Racine county.
This note was also accompanied by a mortgage upon real
estate, and was given to secure the payment for five shares of
capital stock taken by the defendant at the time of its execu-
tion.    All the notes were made payable to the company or

bearer, at their office in the city of Racine, five years from the 10th day of August, 1855, with interest at the rate of *ten per cent. per annum*, payable annually, at the same place. In each case, the plaintiffs received and became the holders of the notes and mortgages from the company, in the regular course of business, without notice of any equities or defects, and for a valuable consideration.

In the first, it is admitted by the defendants, that the plaintiff purchased the note and mortgage from the company, on or about the 20th of November, 1855, paying therefor the sum of $950 18, in cash. In the second, it was proved that he purchased them about the same time, paying therefor, in like manner, the sum of $570 11. In the third, it was shown that the plaintiff, by his agent, purchased them on or about the third day of November, 1855, and paid therefor the full sum which the note upon its face called for. The defendants, by their answers, alleged that the notes and mortgages were obtained by fraud and misrepresentation on the part of the agents who solicited them to take the stock; and claimed also, that the company had no power to receive them upon such subscriptions.

Upon the trials which took place before the judge alone, some evidence tending to establish the fraud, was introduced, but it was very vague and unsatisfactory. Although the circuit judge in the last case, (the evidence upon that subject being nearly the same in all three,) found that the charge of fraud and misrepresentation was proved, yet it seems to us very plain that it was not made out with that clearness and certainty which the law requires, in order to enable a court to pronounce a contract void. With this exception, he found the facts in all the cases as we have above stated them. As conclusions of law, he found that the company had no power to receive the notes and mortgages on the sale of its stock, and and that they were therefore void in the hands of innocent

Cornell vs. Hichens.

holders. From these judgments the plaintiffs appealed to this court.

The provisions of the charter of the Racine and Mississippi Company, in relation to the issue and sale of its capital stock, are in substance, the same as those contained in the charters of the La Crosse & Milwaukee, and Milwaukee & Mississippi Companies, and its power to receive the notes and mortgages in question, must therefore be deemed settled by the decisions of this court in the cases of *Clark vs. Farrington* and *Blunt vs. Walker*. Those cases therefore seem to be decisive of the present.

There is another principle by which these plaintiffs would be protected, even though the company had not the power to receive notes and mortgages upon sale of its stock. It is a well settled rule of law that if there be any purpose for which a corporation may receive a negotiable instrument, the *bona fide* indorsee of one which is given for an unauthorized purpose, shall not thereby suffer. He may rightfully presume that it was received by the corporation in the lawful exercise of its powers; and unless notice of the illegality be brought home to him, he will be protected. In the absence of a statutory declaration to that effect, the contract is not absolutely void; and all persons being alike chargeable with a knowledge of the law, but not of the facts, a party thus disobeying its commands by unlawfully dealing with a corporation, will not be permitted to take advantage of his own wrong to the injury of an innocent person. That the company could take notes and mortgages in the prosecution of its legitimate corporate business, is undoubted. This power was recognized by the circuit judge in giving judgment in the first case for the $400 and interest. The plaintiffs being *bona fide* holders for valuable considerations, the defendants could not, if it had existed, have availed themselves of such a matter as a defense. As to the notes, this conclusion depends, in part, upon

a principle of mercantile law, with which all are familiar; and as to mortgages given to secure the payment of negotiable paper, it has long been held in this state, that the holders of the latter stand in the same relation to them that they do to the paper itself. *Fisher vs. Otis,* 3 Chand., 83; *Martineau vs. McCollum,* 4 id.,163, and *Croft vs. Bunster,* June term,1859, 9 Wis., 503. For this reason it was error to allow the defendants to give evidence of the consideration for which the notes and mortgages were given, after it appeared that the plaintiffs received them in good faith, and in the regular course of business.

Our attention was called to, and the counsel for the defendants relied in argument upon the provisions of chapter 49, of the laws of 1858, entitled " An act declaratory of the rights of defence of mortgagors in certain cases." As these provisions must be known to all, they need not be repeated here. In relation to them, it is sufficient for us to say, that the legislature cannot interfere with, or impair the obligations of past contracts, by declaring, that as against persons not previously affected by them, certain facts, if set up in the pleadings, and established in evidence, shall be a defence and operate to defeat actions brought to enforce them. It seems a hidden way of attempting to accomplish indirectly that which it was felt could not be done directly. The blow might better have been aimed directly at the contracts themselves; for the legislature might with equal propriety have declared that they should not be evidence in any court of justice, or that all the courts of the state should hold the makers discharged from them. This salutary and fundamental principle of our constitution and government has under almost every variety of circumstances, been so repeatedly asserted, and universally recognized by all the judicial tribunals of the land, and has been so often applied by this Court, that we are not disposed to enter upon its discussion. In general

it may be said, that whenever, by the voluntary acts of the parties, and the force and operation of the law, whether statutory or common as applied to those acts at the time, a right accrues to the one to have or demand something of the other, such right cannot, against the will of the party to be injuriously affected, be divested, modified or controlled by any subsequent legislation. In these cases the plaintiffs had, by the act of transfer and the operation of the law as then in force, an immediate and vested right to look to the makers for full payment, regardless of any equities which existed as between them and the company. This right the legislature could not destroy, or cut off, either by changing the rules of pleading or the laws of evidence; or by endeavoring to operate directly upon the right itself.

The judgment in each case must be reversed. The two first causes must be remanded to the court below with directions that judgment be entered in accordance with the prayers of the respective complaints. In the third case a new trial is awarded.